**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

In re:                                        Chapter 7

**CALLI W. ANDERSON,**
    **Debtor.**                              Case No. 15-60637


**ALFRED R. CAUDILL,**
    **Plaintiff,**

**v.**                                        Adv. P. No. 15-06044

**CALLI W. ANDERSON,**
    **Defendant.**

**MEMORANDUM DECISION**

Before the Court are the plaintiff's and the debtor's cross-motions for summary

judgment.  The Court held a continued hearing on December 3, 2015, at which the parties

agreed, as they have throughout this adversary proceeding, that a trial on the merits would be

unnecessary and fruitless, and again urged the Court to issue a ruling on the record and

arguments before it.  At the close of the December 3, 2015 hearing, the Court took the matter

under advisement and directed the parties to file briefs.    The parties have filed their respective

briefs.  After considering the record and the arguments of counsel, the Court will grant summary

judgment in favor of the debtor.

**FINDINGS OF FACT**

Except for one point, the core facts are undisputed.  The plaintiff, Alfred R. Caudill

("Caudill" or "plaintiff"), granted a power of attorney to the debtor, Calli W. Anderson

("Anderson" or "debtor"), on August 7, 2012.  A short while later Caudill handed Anderson

$31,750 in cash so that she could assist him in managing his financial affairs.  The parties shared

a joint bank account, but Anderson never deposited Caudill's money, storing it in her home safe.

The record does not reflect that Caudill ever asked Anderson to deposit the funds, nor why he

chose to hand over a substantial sum in cash instead of depositing the money in their shared

account.  Anderson paid some of Caudill's bills, but their relationship soured when she failed to

make timely payments on some of his bills.  Caudill revoked the power of attorney on May 21,

2013, and asked Anderson to return his cash and other personal effects.  Anderson kept no

records of how she spent Caudill's money.  Thus Anderson did not have an exact count of how

much of the cash remained; however she estimated that the sum totaled at least $15,000.

Anderson put Caudill's belongings in a plaid bag and drove to his house.  Although she

could see through the front door that Caudill was home, Anderson did not attempt to engage him

in conversation.  Instead, Anderson placed the bag on Caudill's porch and hurried back to her

car, where she waited until he retrieved the bag.  Anderson then drove away.  It is here that the

parties' accounts diverge on a critical point.  Anderson claims that she placed Caudill's money in

the bag she left on his porch, while Caudill insists there was no money inside when he inspected

the bag.

Caudill filed a Warrant-in-Debt against Anderson in the Campbell County General

District Court for the jurisdictional limit of $25,000, asserting claims for conversion and breach

of fiduciary duty.  The general district court denied his request and entered judgment for

Anderson.  Caudill appealed.  The Campbell County Circuit Court, the Honorable John T. Cook,

Judge, reversed and entered judgment against Anderson for $25,000 after finding her testimony

about returning Caudill's money to be "wholly incredible."  ECF Doc. No. 30 at 6–7.  Judge

Cook issued his decision after "weighing . . . the facts in the case," and describing the matter as

both a "credibility case" and a "factual case."  *Id.* at 6.  In his December 22, 2014 ruling from the

2

bench, Judge Cook added, "I find . . . there were purposes that this money was held and given to [Anderson] just like there wasn't a power of attorney, that this was held outside the power of attorney. People can do that and that's the way it was done." *Id.* at 7.

Anderson filed her petition seeking relief under Chapter 7 of the Bankruptcy Code on April 7, 2015. Caudill initiated this adversary proceeding on June 19, 2015. According to Caudill, Anderson's debt to him was nondischargeable because it arose from fraud or defalcation while acting in a fiduciary capacity or embezzlement pursuant to section 523(a)(4), and under principles of res judicata and collateral estoppel. Anderson filed an answer admitting most of the underlying facts but denying that this debt should be excepted from discharge.

On August 28, 2015, Caudill moved to amend his complaint to add a claim for willful or malicious injury to his property pursuant to section 523(a)(6). On the same day Caudill filed a motion for summary judgment and a supporting memorandum on both counts based on collateral estoppel. Anderson filed a response in opposition to summary judgement on the section 523(a)(4) claim, and reserved her right to respond to the section 523(a)(6) claim should the Court allow Caudill leave to amend his complaint. The Court held a hearing on the pending motions on October 15, 2015. At the conclusion of this hearing, the Court (1) granted Caudill leave to amend, (2) denied Caudill's motion for summary judgment pursuant to section 523(a)(4),[1] and (3) gave notice that it was considering granting summary judgment in favor of Anderson[2] on the

---

[1] Caudill's motion for summary judgment on the section 523(a)(6) count was premature because the claim for willful and malicious injury was not part of his complaint of record. Caudill initially sought summary judgment through collateral estoppel only for fraud or defalcation while acting in a fiduciary capacity pursuant to section 523(a)(4). *See Pl.'s Mem. in Supp. of Mot. for Summ. J.*, ECF Doc. No. 15. Because Caudill had not pled embezzlement in state court, this issue had not been actually litigated in that forum.

[2] Anderson has never filed a cross-motion for summary judgment pursuant to section 523(a)(4), but she did not need to when the movant's "own motion put the elements of [his] case into play, and the basis of the decision is purely legal." *Tidewater Fin. Co. v. Williams (In re Williams)*, 333 B.R. 68, 71 (Bankr. D. Md. 2005), *aff'd*, 341 B.R. 530 (D. Md. 2006), *aff'd*, 498 F.3d 249 (4th Cir. 2007). Counsel for Anderson asked for summary judgment in her favor during oral argument at the October 15, 2015 hearing.

fraud and defalcation while acting in a fiduciary capacity claim *sua sponte* pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.[3]  *See* ECF Doc. No. 33 (Order memorializing bench ruling).

The Court scheduled a continued hearing for December 3, 2015.  Prior to this hearing, Anderson answered the amended complaint and Caudill filed a memorandum in opposition to the Court's granting summary judgment in favor of Anderson on the count for fraud or defalcation while acting in a fiduciary capacity.  At the December 3, 2015 hearing, the Court heard summary judgment arguments pursuant to section 523(a)(4), including embezzlement.  The parties again reaffirmed their opinion that a trial would be pointless and that the Court had before it all facts necessary to issue a ruling on the merits.  Counsel for Anderson explained that he did not file a response to Caudill's motion for summary judgment on the section 523(a)(6) count because he believed it was still not properly before the Court, Caudill having moved for summary judgment prior to receiving leave to amend.  The Court acknowledged this point, but did not require Caudill to refile his motion for summary judgment and set deadlines for filing any necessary pleadings.  At the conclusion of the December 3, 2015 hearing, the Court took the matter under advisement.

After the December 3, 2015 hearing, Anderson filed a response in opposition to Caudill's motion for summary judgment on the section 523(a)(6) count along with her own cross-motion for summary judgment.  ECF Doc. No. 40.  In turn, Caudill filed his response in opposition. ECF Doc. No. 41.

---

[3]        "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; . . . or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P. 56(f); *see also Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir. 2006) (explaining *sua sponte* summary judgment is proper against a party that had notice and sufficient opportunity to establish a genuine issue of any material fact).

Caudill argues that that the "only conclusion that can be drawn is that [Anderson] simply kept Mr. Caudill's money." ECF Doc. No. 41 at 3. Caudill insists that Anderson's conduct shows that she intended to injure him because she (1) kept no records, (2) stored the cash in her home safe instead of the joint bank account, (3) refused to meet with him when returning his effects, and (4) lied about returning the money. ECF Doc. No. 41 at 5. To Caudill, the state court ruling and the debtor's failure to account allow this Court to find both intent to defraud and intent to inflict a willful and malicious injury. *Id.* at 3, 5.

In her defense, Anderson argues that the state court judgment is an ordinary money judgment and nothing more. Relying on Judge Cook's bench ruling that the cash was held outside of the power of attorney, Anderson maintains that the requisite fiduciary capacity is lacking and that Caudill's request for relief under this portion of section 523(a)(4) must be denied. Anderson further stresses that Caudill did not allege larceny or embezzlement in his state court complaint and that Judge Cook made no findings as to either. In her cross-motion for summary judgment pursuant to section 523(a)(6), Anderson argues that the plaintiff has not shown that she "actually intended harm," or that she "intended the consequences of her act . . . even if the court finds that the Defendant acted intentionally." ECF Doc. No. 40 at 4. As a result, Anderson argues that Caudill's claim must fail because he has been unable to produce a satisfactory showing of willfulness or malice, and no reasonable jury could conclude otherwise.

The state court judgment is the debt that is before this Court. Although the state court judgment order states that Caudill "has proven by a preponderance of the evidence that he is entitled to the relief sought," it does not contain any additional findings.[4] ECF Doc. No. 5. To date, what happened to the money remains a mystery.

---

[4] The judgment order recites that the circuit court held a trial on December 22, 2014, "upon plaintiff's warrant-in-debt and Bill of Particulars and upon the proceedings and orders formerly had; upon the evidence,

5

## JURISDICTION

The Court has jurisdiction  over Anderson's bankruptcy case by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.  Through this adversary proceeding in Anderson's bankruptcy case, Caudill seeks to except the debt Anderson owes him from her chapter 7 discharge pursuant to sections 523(a)(4) and (a)(6) of the Bankruptcy Code. This matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

## ANALYSIS

*(a) Summary judgment*

Summary judgment is proper when there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)).  A material fact is any one which may "affect the outcome of the case," and a genuine issue exists as to any material fact "when the evidence would allow any reasonable juror to return a verdict for the nonmoving party." *Id.*; *see also In re Prof'l Coatings (N.A.), Inc.*, 210 B.R. 66, 73 (Bankr. E.D. Va. 1997) (explaining "nonexistence of a genuine issue of a material fact" is examined by preponderance of the evidence) (quoting *King v. Speaks (In re Speaks)*, 193 B.R. 436, 440 (Bankr. E.D. Va. 1995)).  When analyzing motions for summary judgment, courts should accept as true the evidence of the non-moving party and should construe any reasonable inferences in favor of the nonmovant.  *News & Observer*, 597 F.3d at 576.  In the absence of a genuine issue of a material fact, a court should grant summary judgment against a party who

---

including the testimony of the parties and their witnesses, and their exhibits, upon trial by the Court, and was argued by counsel."  ECF Doc. No. 5.

"has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The plaintiff bears the burden of proof on all elements of nondischargeability. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). If the plaintiff is unable to make a "sufficient showing on an essential element of his case," then the debtor is entitled to judgment as a matter of law. *Celotex*, 477 U.S. At 323; *see also id.* at 326 (explaining that a party asking for summary judgment has to "come forward with all of [his] evidence" sufficient for a court to find that he is entitled to judgment as a matter of law); *accord Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir. 2006).

*(b) Fraud or defalcation while acting in a fiduciary capacity*

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Defalcation is defined as an ordinary "failure to meet an obligation" or "a nonfraudulent default." *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806, 811 (4th Cir. 2001), *abrogated on other grounds by Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1759 (2013). Defalcation need not rise to the level of embezzlement, which requires fraudulent intent. *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 20 (4th Cir. 1997).

The Supreme Court has instructed that that for a debt to be nondischargeable due to defalcation, the debtor must have committed an "intentional wrong" either knowingly or with "reckless conduct of the kind that the criminal law often treats as the equivalent," while serving as a fiduciary. *Bullock*, 133 S. Ct. at 1759. For her actions to reveal the required mental state for criminally reckless conduct, the debtor must have "consciously disregard[ed] a substantial and unjustifiable risk" that her conduct will result in a breach of a fiduciary duty. Model Penal Code § 2.02(2)(c); *Bullock*, 133 S. Ct. at 1759. "That risk 'must be of such a nature and degree

that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.'" *Bullock*, 133 S. Ct. at 1760 (quoting Model Penal Code § 2.02(2)(c)) (emphasis in original).

In order to prevail on a claim for defalcation while acting in a fiduciary capacity, the plaintiff must show by preponderance of the evidence that the debtor was "(1) subjectively aware of his fiduciary duty, (2) conscious that he disregarded a risk that his conduct breached his fiduciary duty, and (3) subjectively aware that such risk was substantial and unreasonable." *Cincinnati Ins. Co. v. Chidester (In re Chidester)*, 524 B.R. 656, 662 (Bankr. W.D. Va. 2015). Because the Court finds that Caudill cannot withstand summary judgment on his defalcation claim, it will not address actual fraud, which requires a higher level of proof and must fail in turn.

At the outset, the Court notes Caudill's argument that Anderson may have functioned with the required fiduciary capacity because he entrusted her with money to hold for his benefit.[5] *See Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 498 (4th Cir. 2008) ("If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created.") (quoting *Broaddus v. Gresham*, 26 S.E.2d 33, 36 (Va. 1943)); *see also Hamby v. St. Paul Mercury Indemn. Co.*, 217 F.2d 78, 80 (4th Cir. 1954) ("Not all agents act in a fiduciary capacity; but, certainly, an agent is acting in such capacity when he is handling funds which have been entrusted to him to be applied to a specific purpose.").

---

[5]     Judge Cook's conclusion that Anderson held Caudill's money outside a power of attorney does not prohibit Anderson from having held the cash through an oral express trust. Even though Caudill has not argued that the parties' behavior created an oral trust, his counsel stated at the December 3, 2015 hearing that a fiduciary duty can exist outside of a power of attorney. The Court recognizes that an oral trust may exist if proven by clear and convincing evidence. *See* Va. Code § 64.2-725 (requiring clear and convincing evidence to prove the existence of an oral trust).

Courts have consistently held that a trustee of an express trust qualifies as a section 523(a)(4) fiduciary.  *Crockett v. Ferris (In re Ferris)*, 447 B.R. 516, 523 (Bankr. E.D. Va. 2011); *see also Harrell v. Merch.'s Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 WL 159278, at *3 (4th Cir. Mar. 19, 1999) (per curiam) (unpublished decision) ("The definition of 'fiduciary' for purposes of § 523(a)(4) is controlled by federal common law and is narrower than under general common law.  Under this section, a fiduciary is limited to instances involving express or technical trusts.") (citing *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)).  For the purpose of this Memorandum Decision, the Court assumes, without deciding, that Anderson qualified as a fiduciary pursuant to section 523(a)(4).[6]

Following *Bullock*, Caudill had to at least demonstrate that Anderson's actions evidenced a conscious disregard of a substantial and unjustifiable risk that her behavior was a gross deviation from the standard of conduct of a fiduciary.  Caudill, however, was unable to proffer evidence of Anderson's state of mind regarding her fiduciary obligations despite having multiple opportunities through pleadings and oral argument.  Caudill failed to allege or produce sufficient evidence that Anderson was subjectively aware and understood the importance of her fiduciary duties, let alone that she acted with a conscious disregard of a substantial and unjustifiable risk that her conduct would violate this responsibility.[7]  *C.f. Cincinnati Ins. Co. v. Chidester (In re*

---

[6]     Caudill maintains that this Court has the authority to determine that Anderson held his money through the power of attorney—even though the state court ruled that she did not—because "Judge Cook made no finding as to whether a fiduciary relationship existed . . . because it was not necessary to his decision."  ECF Doc. No. 34 at 2; *see also id.* ("It is only when the request for attorney's fee is considered that Judge Cook refers to the power-of-attorney."); *id.* at 4 ("Thus the existence of the power-of-attorney created a fiduciary relationship between the parties.").  The Court understands Caudill's concern that the state court was not deciding dischargeability, but it is bound by the plain language of Judge Cook's bench ruling that this debt arose outside the power of attorney.  *See Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 20 (4th Cir. 1997) (affirming bankruptcy court's application of collateral estoppel to state court's determination of fiduciary capacity in a valid, final judgment).

[7]     Caudill's reliance on Virginia's statutory requirement that an agent acting under a power of attorney or a trustee of an express trust maintain records—an obligation that is enforced without any culpable mental state— is misplaced.  A fiduciary who is unaware of her duties or does not consciously disregard them will be able to discharge her debts.

*Chidester)*, 524 B.R. 656, 664 (Bankr. W.D. Va. 2015) (granting summary judgment when

debtor (1) "ignored and consciously disregarded [his fiduciary] responsibilities as well as any

risk failing to comply with those responsibilities might occasion," (2) understood the importance

of fiduciary duties, and (3) acknowledged he "would have been . . . in a lot of trouble" for failing

to account).

Caudill maintains that because Anderson "has put forth no explanation for the disposition

of Mr. Caudill's money other than her claim that she returned it to him," the Court "is entitled to

infer mental state" from her conduct.  ECF Doc. No. 34 at 3.  The flaw in this argument is that

Caudill cannot get past the first hurdle—that he carries the burden of proof on all elements of

nondischargeability.  In the absence of supporting evidence, the Court cannot infer that Anderson

was reckless to such a degree as to have acted in a way that was unreasonable and a gross

deviation from the appropriate standard of conduct.[8]  Even though the state court did not believe

Anderson's claim that she returned Caudill's money, this fact alone, without more, does not

show that she understood her fiduciary responsibility or was aware that her conduct would

violate her duty and consciously did it anyway.  The Court concludes that the record does not

support a finding that Anderson's behavior rose to the level of criminal recklessness.

By failing to "to come up with the necessary forecast of hard evidence," Caudill cannot

"avoid summary dismissal."  *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d

211, 217 (4th Cir. 1987).  Caudill did not offer satisfactory evidence regarding Anderson's

mental state and cannot now "rely only on [his] conclusory pleading allegations to hold the case

at issue." *Id.*  As a result, the Court finds that "no rational trier of fact, properly instructed in the

substantive law and on the burden of proof," could enter judgment in favor of Caudill. *Id.*  The

---

[8]        The Court gives no weight to the fact that Anderson never deposited the money in the joint account because
it finds that Caudill intended this very arrangement.

Court will grant judgment as a matter of law in favor of Anderson on the section 523(a)(4) claim

for fraud or defalcation while acting in a fiduciary capacity pursuant to Rule 56(f) of the Federal

Rules of Civil Procedure.

*(c) Embezzlement*[9]

Embezzlement is "the fraudulent appropriation of property by a person to whom such

property has been entrusted, or into whose hands it has lawfully come." *Day Care-Sam Furr,*

*LLC v. Ross (In re Ross)*, 478 B.R. 715, 734 (Bankr. W.D.N.C. 2012) (quoting *KMK Factoring,*

*L.L.C . v. McKnew (In re McKnew)*, 270 B.R. 593, 631 (Bankr. E.D. Va. 2001)); *accord Foreign*

*Affairs Serv., Inc. v. Pittman* (*In re Pittman)*, 442 B.R. 485, 492 (Bankr. W.D. Va. 2010).   The

debtor must have appropriated the property for her own benefit or use.  *Sherman v. Potapov (In*

*re Sherman)*, 603 F.3d 11, 14 (1st Cir. 2010) ("The essence of [embezzlement] is knowing use of

entrusted property for an unauthorized purpose."); *see also id.* at 13 ("It is knowledge that the

use is devoid of authorization, *scienter* for short."); *United States v. Young*, 955 F.2d 99, 103 (1st

Cir. 1992) (describing embezzlement as a fraudulent conversion through which "the embezzler

will have acted for his own purposes and contrary to authorization").  In order for Anderson to

have embezzled Caudill's cash, she must have (1) spent his money for an unauthorized purpose

(2) under circumstances revealing fraudulent intent or deceit.  To wit, Anderson must have

committed a fraudulent conversion.

The necessary fraudulent intent is "positive fraud, or fraud in fact, involving moral

turpitude or intentional wrong."  *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1759 (2013)

(quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878)).  A court may find the requisite fraudulent

---

[9]       Larceny, the remaining prong of section 523(a)(4), is inapplicable because Anderson had initial lawful
possession of Caudill's money.  Aside from this minor distinction, nondischargeability for embezzlement or larceny
follows the same analysis.  In oral argument, Caudill insisted that Anderson stole his money—that the state court
judgment resolved this issue against her.  The Court disagrees and declines to read into the plain text of the state
court judgment and bench ruling a finding that is not there.

intent through circumstantial evidence "demonstrating an intent to permanently deprive another of his property." *Dean v. Hunter (In re Hunter)*, 484 B.R. 721, 727 (Bankr. E.D. Tenn. 2012). It is not intent to harm that is critical, in contrast to section 523(a)(6), but the intent to convert the property for personal use. *McKnew*, 270 B.R. at 632. Without fraudulent intent, however, there is no embezzlement.

Several recent cases from the Fourth Circuit illustrate the type of evidence necessary to support a finding of embezzlement. In *Ross*, the debtor spent over $200,000 for personal expenses from a credit line of the limited liability company that he managed. *Ross*, 478 B.R. at 725. The court had no trouble concluding that the debtor's misappropriation of funds exceeded the scope of his authority, adding that these actions on their own, let alone coupled with the debtor's "refu[sal] to give back what he admittedly took," rose to the level of embezzlement. *Id.* at 735.

Along the same lines, the court in *Caviness v. Lane (In re Lane)*, excepted a debt from discharge as a result of embezzlement when the debtor withdrew more than $100,000 from corporate accounts for personal use, knowing he lacked authority to do so. 445 B.R. 555, 565 (Bankr. E.D. Va. 2011). Even after the debtor apologized for his breach of trust, he continued to siphon off money while concealing his actions and making fraudulent misrepresentations to financial institutions. *Id.* Reviewing the debtor's repeated fraudulent and deceitful behavior, the court found that there was "little question" that the debtor embezzled company funds. *Id.*; *see also Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670–71 (Bankr. E.D. Va. 2001) (knowing wrongful transfer of vehicle titles in order to secure loan while concealing actions from plaintiff, said loan allowing debtor to keep business afloat while paying his full salary). In *Ross*, *Lane* and *Davis*, the courts were able to infer fraudulent intent because the evidence in each case revealed

12

that the debtors disposed of entrusted property for personal gain, knowing that such dispositions were not authorized.

In the present case, the Court is faced with a situation where neither side has provided an explanation of what happened to the remaining cash. Anderson claims she returned it; Caudill maintains she did not. The state court judgment does not shed any light on this problem and there are no financial records whatsoever. Caudill insists that because the state court judge did not believe Anderson's testimony about returning his money, in conjunction with her inability to account, this Court must conclude she embezzled it. Without more, these facts are insufficient evidence that Anderson used the funds for her personal benefit and did so all the while knowing that she did not have the authority so to do. After reviewing the record and arguments of counsel, the Court concludes that Caudill failed to carry his burden of producing a satisfactory showing of circumstantial evidence that Anderson acted with fraudulent intent. [10]

In contrast to *Ross*, *Lane* and *Davis*, Caudill has offered no evidence of how Anderson may have benefited from the at least $15,000 she admitted remained when he requested his money back. Nor has Caudill produced any proof that Anderson used his money to acquire personal assets, pay her own bills, or for some other unauthorized purpose. As before, Caudill asks the Court to infer from Anderson's failure to account for the money that she kept it, and that this is enough for embezzlement. ECF Doc. No. 34 at 6. The Court disagrees and finds that the circumstances of this case fall far short of fraudulent intent or deceit because Caudill has not made a satisfactory showing that Anderson intended to permanently deprive him of his property.

---

[10] Even if the Court were to accept Caudill's argument that the state court entered judgment for conversion, he must still carry his burden to show that Anderson's conversion was fraudulent.

Caudill concedes that he has provided the Court with all of his evidence.  This is not due to lack of effort.  The hallmark of this dispute is that what little evidence Caudill has available is not enough.  Because Caudill has not made a sufficient showing of either unauthorized appropriation or fraudulent intent, the Court will grant summary judgment in favor of Anderson pursuant to section 523(a)(4) in full.

*(d) Willful and malicious injury to property*

In order for a debt to be excepted from discharge pursuant to section 523(a)(6), the defendant must have committed the harm with "the actual intent to cause injury."  *Huntington Nat'l Bank v. Aman* (*In re Aman*), 498 B.R. 592, 607 (Bankr. N.D.W. Va. 2013) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).  This is a demanding standard that requires a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."  *Geiger*, 523 U.S. at 61 (emphasis in original); *see also Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 729 (4th Cir. 2006) (noting negligent or reckless actions are insufficient).  Even if the debtor performed an intentional act that harmed the plaintiff, it "does not necessarily mean that [she] acted willfully and maliciously for purposes of § 523(a)(6)."  *Duncan*, 448 F.3d at 729.

To satisfy section 523(a)(6), "the plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant's actions caused an injury to the plaintiff's person or property, (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious."  *Harrold v. Raeder (In re Raeder)*, 399 B.R. 432, 441 (Bankr. N.D.W. Va. 2009).  In essence, the plaintiff must prove an "intentional tort with a subjective standard of intent [to injure]."  *KMK Factoring, L.L.C. v. McKnew* (*In re McKnew*), 270 B.R. 593, 636 (Bankr. E.D. Va. 2001).

14

If the debtor knows that harm from her intentional act is certain, or is substantially certain to occur, then her conduct is willful. *Knight v. Eppard (In re Eppard)*, 502 B.R. 458, 464 (Bankr. W.D. Va. 2012); *see also Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 357 (B.A.P. 9th Cir. 2012) (stating debtor is presumed to know "the natural consequences of . . . her actions"), *aff'd*, 604 F. App'x 552 (9th Cir. 2015); *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670 (Bankr. E.D. Va. 2001) (explaining willfulness is met by an intentional tort that is substantially certain to cause injury). Since *Geiger*, courts have found willfulness satisfied by "a wrongful act that is voluntarily committed with knowledge that the act is wrongful and will necessarily cause injury." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001).

Malice requires proof that the debtor committed the intentional act "deliberately and intentionally in knowing disregard of the rights of another." *First Nat'l Bank of Md. v. Stanley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir. 1995) (citation omitted). Although the debtor must have acted "without just cause or excuse," no ill will is necessary. *Davis*, 262 B.R. at 670.

Both willfulness and malice must be pled and proven separately. *Heredia v. Enriquez (In re Enriquez)*, 506 B.R. 114, 118 (Bankr. E.D. Cal. 2014). "Because a debtor will rarely, if ever, admit to acting in a willful and malicious manner, those requirements may be inferred from the circumstances surrounding the injury at issue." *Aman*, 498 B.R. at 608; *accord Eppard*, 502 B.R. at 465.

It is a longstanding principle that a willful and malicious conversion is excepted from discharge pursuant to this Bankruptcy Code section. *Eppard*, 502 B.R. at 463.[11] Virginia,

---

[11]     A willful and malicious conversion will except a debt from discharge pursuant to both section 523(a)(4) and (a)(6). The key distinction is that both willfulness and malice are required by section 523(a)(6), while a finding of either willfulness or malice is sufficient for embezzlement or larceny pursuant to section 523(a)(4). *See Pittman*,

however, defines conversion as (1) any "wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another," and (2) the act is wrongfully exerted "in denial of or inconsistent with the owner's rights." *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. 2000). By its definition, conversion in Virginia is insufficient to rise to the level of a willful and malicious injury because it does not require any mental state, and a plaintiff may recover "irrespective of good or bad faith, care or negligence, knowledge or ignorance." *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956).

Although *Geiger* clarified the analysis courts must undertake when examining section 523(a)(6) claims, it endorsed the decision reached in *McIntyre v. Kavanaugh*, 242 U.S. 138 (1916), when a broker converted plaintiff's stock certificates in order to pay personal debts. *See Geiger*, 523 U.S. at 63 (reaffirming *McIntyre*). *McIntyre* explained that a debtor who intentionally disregards a known duty and "necessarily causes injury" through a wrongful act has acted in a willful and malicious manner. *McIntyre*, 242 U.S. at 141–42. The result is that a debtor who "deprive[s] another of his property forever by deliberately disposing of it without semblance of authority" will be unable to discharge her debt. *Id.* at 141; *accord Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934) (noting that the injury in *McIntyre* was "unexcused and wanton," but pointing out "a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances").

At the heart of every section 523(a)(6) case lies the issue of whether or not the plaintiff has presented adequate circumstantial evidence of the debtor's state of mind. *Compare Jercich*, 238 F.3d at 1208–09 (deciding injury was substantially certain to occur when debtor-employer knew he owed wages but withheld them without just cause or excuse), *Day Care-Sam Furr, LLC*

---

442 B.R. at 493 (excepting debt from discharge pursuant to section 523(a)(4) but not (a)(6) after finding malice "was not fully adjudicated in the State Court proceedings").

*v. Ross (In re Ross)*, 478 B.R. 715, 735 (Bankr. W.D.N.C. 2012) (finding debtor intentionally converted business assets for personal use in a way substantially certain to result in financial harm to plaintiffs), *Ocean Equity Grp., Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 135 (Bankr. E.D. Va. 2010) (concluding debtor's liquidation of plaintiff's equipment and use of proceeds for personal expenses after debtor ceased business operations was a willful and malicious injury), *and Davis*, 262 B.R. at 670–71 (finding substantial certainty of harm from debtor's knowing wrongful transfer of titles to plaintiff's vehicles and his repeated concealment of his actions in deliberate disregard of plaintiff's rights), *with Stambaugh v. Stambaugh (In re Stambaugh)*, 533 B.R. 449, 459 (Bankr. M.D. Pa. 2015) (determining plaintiffs did not state a plausible claim pursuant to section 523(a)(6) against debtor who may have abused his authority as trustee of a family trust because there was "an absence of underlying alleged facts" regarding willfulness and malice), *and Eppard*, 502 B.R. at 466 (finding insufficient circumstantial evidence of debtor's state of mind to conclude that debtor's failure to turn over her tax refund was done with substantial certainty that plaintiff would be injured).

The debt that is before the Court is the state court judgment awarding $25,000 to Caudill. The Court finds that Anderson is entitled to judgment as a matter of law because Caudill has not produced sufficient, non-conclusory facts that she acted in a willful and malicious manner. Caudill insists that "a trier of fact is entitled to infer mental state from the actions of the litigant." ECF Doc. No. 34 at 3.  While this is correct, the circumstantial evidence in this case does not shed a light on Anderson's intent.  In contrast to *Jerich*, *Ross*, *Wooten* and *Davis*, Caudill has offered no evidence that Anderson used his property for her own benefit or that she concealed her actions from him.  Even though Caudill has alleged that Anderson deprived him of his money, as in *Stambaugh* and *Eppard*, he has not shown that she did so deliberately and without

justification.  The Court finds that Caudill has not met his burden of showing that there was at

least a substantial certainty that Anderson's conduct would injure him in knowing disregard of

his rights.

Caudill's insistence that "Anderson has provided no plausible explanation for what she

did with the money," ECF Doc. No. 34 at 4, cannot overcome the fact that he carries the burden

of proof on each element of nondischargeability.  Without more, the state court finding it

"wholly incredible" that Anderson left $15,000 in a bag on Caudill's porch and the fact that

Anderson refused to speak with Caudill when returning his effects are insufficient to establish

that she perpetrated a willful and malicious injury upon Caudill.  The Court concludes Anderson

is entitled to judgment as a matter of law that she did not inflict a willful and malicious injury to

Caudill's property pursuant to section 523(a)(6).

## CONCLUSION

The Court does not condone the conduct Caudill has alleged in this case.  Too often

longstanding relationships implode when even small sums of money become involved.  When

thousands of dollars in cash change hands, the fact that the parties end up finding themselves on

separate sides of a courtroom will surprise no one.  The way the parties chose to manage their

financial relationship was ill-advised, and the Court joins Judge Cook's warning that such

arrangements "are the kind of things that create lawsuits . . . , this is what ends up when you do

business like that from both sides."  ECF Doc. No. 30 at 6.  The Court sympathizes with Caudill

in his attempt to obtain satisfaction on the debt he is owed, but the Court is bound by the

principle that the Bankruptcy Code's exceptions from discharge are limited to express categories.

For the foregoing reasons, the Court concludes that Anderson's debt to Caudill is

dischargeable and that she is entitled to summary judgment on all counts of Caudill's amended

complaint.  Accordingly, Caudill's motion for summary judgment is **DENIED** and Anderson's motion for summary judgment is **GRANTED**.

The Court will contemporaneously issue an Order consistent with the findings and ruling of this Memorandum Decision.

The Clerk is directed to send electronic notification of the entry of this Memorandum Decision to counsel of record for the plaintiff and counsel of record for the debtor.

Entered:   2/18/16

_____
Rebecca B. Connelly
U.S. Bankruptcy Judge